Ruetieí, Judge.
 

 The bill was filed in 1826, and seeks a general account of the estate of the plaintiff’s father, of whom the defendant is surviving executor. And particularly it prays a division of several slaves and their increase, which the defendant claims as having purchased at sales of his testator’s estate in
 
 1797
 
 or before, and of the hires of them and other slaves before that time. The bill states the death of the testator forty-two years before the filing of it ; and it admits a settlement made in December, 1797V between the defendant and the plaintiff
 
 Abraham,
 
 in his own right and as guardian of the two other plaintiffs, his brother and sister : And seeks to avoid that settlement upon the grounds, that
 
 Abraham
 
 was then an infant wanting six months of full age; that the throe slaves,
 
 Penny, Milly
 
 and
 
 Edmund
 
 (claimed to have been purchased by the defendant) were not included in it, nor the hires of any of the negroes of the estate
 
 ;
 
 and that if those negroes were included in it, the defendant’s purchase was fraudulent and void, being' at his own sale.
 

 There is not the least doubt that the negroes were accounted for in the settlement of 1797. The account current exhibited with the bill gives the estate credit for £816 6 10, as “ amount of sales.” What was that large sum for ? The account was stated by commissioners appointed by the-court on the llth of December, and the receipts given by
 
 Abraham
 
 bear date the 14th of December ; and the last sales of negroes were made at or before the last day. At the sales, the plaintiffs, although
 
 *170
 
 some of them were infants, purchased
 
 ;
 
 and the receipts clearly show, that
 
 Milly
 
 and
 
 Edmund
 
 were then claimed and admitted to he
 
 Norfleet’s
 
 under his purchase, as
 
 Pen-mj
 
 was under a former one. They are given for the ne-groes specifically bequeathed to each child, and also for those bought by them at that sale, being expressed to be for ‘ * negroes which the executor allowed them to buy at public sale” ; and they are also for six negroes men--tioned by name, “ remaining of my father’s estate after payment of his debts.”
 
 Penny, Milly
 
 and
 
 Edmund
 
 were known to all the parties as having belonged to the es--tate, and therefore must then have been considered as Norfleet’s. indeed it is stated in the bill, that
 
 Norfleet
 
 then claimed them, and procured
 
 Mraham
 
 to be appointed guardian, and took the receipt/or
 
 the purpose of confirming the sales.
 
 With the knowledge of these facts, can there be a rational doubt, that the commissioners must have included the prices of those negroes in the sum of J81G 6 10
 
 ;
 
 or that the plaintiff
 
 Mraliam
 
 would have settled upon any other principle
 
 ;
 
 for he was present at the sale and made purchases himself. Were his own included ? if so, why not
 
 Norfleet’s
 
 ? But the receipts, as expressed, are conclusive.
 

 I do not inquire then, whether the commissioners or the executor made the sale ; or whether in either case the executor could purchase by the law of Virginia ; as to which there is evidence in the affirmative. The right' of the defendant does not rest on the purchase itself. He accounted for tiie value, which was accepted by the legatees
 
 ;
 
 who thereby confirmed the title. The court does not mean to say, that a guardian and executor can in an improper case, where there is no necessity for a sale or the like, bind the ward by such a confirmation. And it is true., that the court does not encourage transactions of this sort between trustee and
 
 cestui que trust ;
 
 and will, if undue influence can be proved, or can even be slightly inferred, and advantage made by the trustee, he ready to give relief, if asked for in reasonable time. Was a sale necessary ?. The contrary is not even alleged. Indeed the plaintiffs bought at it. Was the price
 
 *171
 
 inadequate ? There is no allegation of that. It has already been shown, that it was paid in account. Was the settlement unfairly made, and by means of undue influence acquittances obtained ? It was not done in privacy, where such influence could be most effectually exercised over an inexperienced youth by an uncle ; but with the assistance of three justices of the peace appointed by the court, and proved to be capable and upright men. I know of no principle, upon which such a sale, necessary and for a full price, followed by a settlement in which the price is accounted for — supposing the parties to be all
 
 sui juris
 
 — could be impeached, however recent the transaction. . Much less, where the express confirmation receives the sanction of twenty-nine years acquiescence.
 

 There is an effort however to avoid the effect of that, by alleging that the settlement is itself inoperative, because
 
 Abraham Villines
 
 was an infant ; that soon after the sale,
 
 Jforjieel
 
 removed from Nansemond to Person county in this state, and brought the plaintiffs, his nephews and niece with him, and treated them for a long time with great kindness, so that they did not suspect
 
 until lately
 
 (that is, in 1825) any unfairness that the plaintiff
 
 Abraham
 
 then went to Nansemond, and discovered that no inventory nor account of sales had been returned, and that in the account current there were no parti-lars of the sales, but only a lumping credit of
 
 “
 
 account of sales”
 
 ;
 
 and that there was no credit for the hire of negroes, though several of them were grown. But the bill admits the charges for debts paid, to be just.
 

 There is no distinct evidence of the age of
 
 Abraham.
 
 It must therefore be taken that he was of full age. He acted as if ho was; the defendant, his uncle, treated with him as such ; and the County Court appointed him guardian of his brother and sister. But it is a circumstance of very little consequence, as the case is now situated : for he and the others have acquiesced many years after full age.
 

 Then as to the new discovery. What has been discovered ? Any unfairness ? No ; but that there might
 
 *172
 
 have been unfairness, for ought that appears on the account current, because the particulars are not given. Is that a new discovery ? It must have been known to
 
 Mraham
 
 when he settled. But suppose that he did not then know the manner in which the account was stated, it does not follow that the particulars were not exhibited both to the commissioners and to him, when the settlement was made ; nor especially, that the negroes were not accounted for therein. It has been already shown, that the negroes were, in fact, included, notwithstanding that does not expressly appear upon the account. It cannot be supposed the commissioners would state the account without knowing the particulars. No force is given to their report
 
 proprio vigore
 
 as a bar; but it rebuts the presumption of fraud, and invoking their aid is a circumstance to show, that the particulars were then known to all the parties, because they as well as the plaintiff would naturally require thorn, although the account does not exhibit them to us now. . The plaintiffs ought to show that an error was committed. The most material one suggested by them turns out to be unfounded in truth. The pretence of new discovery then can avail nothing. The only thing discovered is, that the account is in a particular form. But that neither proves, that the fact was not known at the time
 
 ;
 
 nor that wrong was done to the plaintiffs ; nor that the defendant ought not to retain the slaves, which other documents prove he paid for. Above ail, the parties knew that some account had been settled, and that acquittan-ces had been given nine and twenty years before
 
 ;
 
 and they were bound to look into any possible error sooner. Here, the three commissioners are dead ; the executrix who mauaged the estate exclusively for eight years, while the defendant was in Europe, and her husband arc also
 
 dead;
 
 the witnesses to the receipts, and every other person conusant of the sale and settlement, except the parties, are in their graves. It is impossible then to give further explanation ; and the answer is precise as to the justice of the settlement. Tune is evidence, from acquiescence in the exercise by another of an adverse right,
 
 *173
 
 of the grant
 
 of that
 
 right. But it is further respected, upon a principle of
 
 public
 
 policy, as a bar to the investí-gation of that right, because the truth cannot be discovered. Here indeed the proof, by documents, happens to be clear as to the value of the slaves being accounted for ; but these are only presumptions. As "to the hires before that time, they may be included in the sS816 G 10; they may not have been received by the defendant, who was in Europe, but by the executrix, and otherwise accounted for ; or the negroes may have been kept together by the mother for the support of the family, as the evidence makes probable. The parties knew they were entitled to them ; and they knew the estate was closed. After all witnesses are buried and vouchers given up, a new account cannot be ordered upon a bill filed twenty nine years after the trust was last acted on — the parties all living in the same neighborhood, and for nearly the whole time under no disability. Transactions of that period arc seen by too uncertain and obscure a twilight, to be sufficiently clear for judicial action. The difficulty of arriving at the truth is insuperable; and others would be encouraged to sleep upon their claims. The court must say, you come too late.
 
 Petty
 
 v.
 
 Harman (ante
 
 1 vol. 191) is not as strong as this case. *
 

 
 *172
 
 A settlement of the account of an executor by commissioners appointed by the Couuty Court is not a bar to a future account, but it rebuts the presumption of fraud.
 

 
 *173
 
 The case of
 
 v{!J"figu
 
 approved.
 

 Per Curiam — Birr dismissed.