Ruffin, C. J.
 

 It would seem, that it was intended to raise an equity for the plaintiff, founded on his mistake in applying the assets to a debt, which he could not in law prefer to those of the defendant and others, then, in"' suit. Some such idea obscurely appears in the bill. But
 
 *66
 
 no relief could be given on that principle. If an admin istrator give a preference to a creditor, who is not entitled to it, he commits a
 
 devastavit
 
 and is chargeable for the same assets to another, whose debt is of a higher dignity. or whose diligence gives him the priority. He therefore applies the assets at his peril in that respect. And it is the same in equity as at law ; for, it is not against conscience, that the defendant should insist on his legal priority, and he should have the benefit of the assets which were properly applicable to his satisfaction. However honest the plaintiff’s mistake may have been, still he made a misapplication of the assets, and therefore cannot throw the loss on the defendant.
 

 The bill, however, states another ground for relief and for the injunction, which appears to the Court to he a good one in itself, and not to have been sufficiently answered ; which is the liability of these parties, as co-sureties, to contribute equally to the debt to Daniel. It is admitted that the principal did not leave property sufficient to pay his debts and that the plaintiff paid this debt. The only other point material to the question of contribution is, as to the fund, out of which the payment to Daniel was made and ought to have been made. If at the time the plaintiff paid the debt he was bound or at liberty to discharge it out of the assets of the principal, he ought not to have contribution from the defendant, since he had in his own hands the means of saving harmless both himself and the defendant, and the principal, in truth, could not, to this purpose, be deemed insolvent. On the other hand, if, at that time, he had no assets applicable to the debt, that is, liable in law therefor, so that, as administrator. he might then have been charged therewith in an actiott-by Daniel, it would seem manifestly unjust, that, asco surety,.he should be liable for more than a moiety. He s not bound to pay that debt instantly upon admin
 
 *67
 
 istering, in order to found a claim for contribution from his co surety; but was entitled to a reasonable time to convert the property into money for that purpose. lie. could not compel the creditor to bring a suit, so as lo en* able him to confess a judgment and thereby appropriate the assets to this in preference to other debts in suits. If, therefore, before he had the means of payment in hand, or before he could confess judgment for this debt, other creditors tied up the assets by bringing suits, so that he could not legally appropriate to Daniel’s debt, it is the same, for the purpose of the present question, as if there had been no assets at all — since it was not the plaintiffs fault, that he did not apply them in discharge of this debt, but he was prevented from doing so by the law itself, which makes a suit brought so attach upon the assets, as to render a voluntary payment of another debt in equal degree or
 
 devastavit.
 
 How, then, is it to be understood in this ease, the assets stood at the time of the payment to Daniel
 
 1
 
 It is to be noted, that, upon]the trial at law, the plaintiff was content to take a credit for this sum as a disbursement of the assets, and so stated it in his administration account and that, thus stated, the assets would be exhausted and nothing left to answer the defendant’s demand. The defendant then objected that the assets, thus applied by the plaintiff, were bound to him by his prior suit, and he sue. ceededon that ground in having that credit struck out of the account. That does not, indeed, prevent the defendant from showing, now, that there were assets applica» ble to Daniel’s satisfaction. For, the point on the trial was, whether it was not a
 
 devastavit,
 
 as against the plain* tiff at law, even if the payment to Daniel was made out of the assets, and the creditbr was not called on to go further. But when the plaintiff claims contribution, as between co-sureties, it is open to the defendant to allege that thc principal left assets, with which.the plaintiff, as
 
 *68
 
 Iiis administrator, might and ought to have, paid the debt. The question is. bow the fact is in that respect. And up-on the circumstances stated, the Court thinks that it is
 
 prima facie
 
 to be understood, that there were no assets for that purpose. According to the account exhibited» connected with the judgment obtained by the defendant, there were none ; and the bill states explicitly that there were none, and that the account is just and true. The answer does not dispute a single item in it. It does not' allege, that the payment of any one of the debts was improper, saving only that the voluntary payments were erroneous, as against his prior suit; or that the plaintiff ought to have paid Daniel before he paid any of the other debts, mentioned in the aecouut. Without entering into any particulars, the defendant merely states in general terms his belief, that, after paying his judgments, there are assets sufficient to pay Daniel. But such a gpneral statement cannot overthrow the positive and precise alle-gationsofthe bill, accompanied by the account. In support of his belief, the defendant adduces one allegation of-fact and one only; which is, that the intestate fraudulently gave the plaintiff a slave which thereby became assets. But that does not answer the plaintiff’s case, so as to require the dissolution of the injunction. The answer is not on that point responsive to the bill; but brings forward new matter in avoidance of the plaintiff’s
 
 prima facie
 
 case. Besides, the answer does not profess to state this as a thing within the defendant’s own knowledge. For those reasons it is proper to reserve the consideration of that question, until the parties can enter into proofs, upon the hearing or before the Clerk in taking the account.— In fine, it is apparent that the Court cannot make a decree with any confidence of its justice, until, by an account, it can be ascertained, whether there were in the hands of the plaintiff assets of the intestate applicable to
 
 *69
 
 the payment of Daniel to any anti what amount.
 
 Prima fads
 
 it is to be taken, under the circumstances, that there were not, and therefore that the defendant is chargeable to the plaintiff for a moiety of the debt. While thus ap* parently chargeable, he ought not to coerce from the plaintiff personally the payment of his judgment at lawf instead of letting one of the demands stand against the other.
 

 The alleged defect of tille to the land purchased by the defendant cannot affect the question. The defect is not sufficiently stated. If it were, it cannot be presumed, that the plaintiff made himself liable for the title, or knew of the defect before he disposed of the bond for the purchase money in the course of administration, as stated in the administration account, on which the defendant fixed him with the assets, in respect of which, in part, he took his judgment.
 

 There was, therefore, no error in the order appealed from.
 

 PfiH CuiUAM. Ordered to he. certified accordingly,