JAMES FREEMAN and wife and others *v.* JOHN WILSON, Guardian, and others.

A guardian has power to exchange property of his wards, which he thinks hazardous, for other property; and if his discretion has been honestly exercised in the transaction, the courts will not hold him liable for the results.

Where a guardian received from an administrator a note on a certain person without surety, it was his duty, at once to collect the same, or require the maker of the note, although a wealthy man, to secure it. If, instead of this, he exchanges said note for one payable to himself as guardian, also unsecured, he becomes liable for the amount thereof.

In the exercise of a sound and honest discretion, a guardian was empowered, during the late war, to receive Confederate money for the rent of his wards' land and the hires of their slaves, and disbursing the same for their support and education. He might also receive payment of apparently solvent bonds and notes, in the same currency, if the amounts were similarly disbursed, or expended in the payment of taxes, and such like, without being liable to be charged therewith.

A guardian should be charged with what he receives, and credited with what he paid out, it not appearing that he collected anything prematurely, or kept on hand any unreasonable sum.

CIVIL ACTION, tried before *Moore, J.,* at Spring Term, 1875, of BERTIE Superior Court, upon exceptions to the report of the referee, to whom the cause was referred to state an account of the defendant as guardian of the *feme* plaintiff, and the intestate of the plaintiff, Freeman.

The facts pertinent to the case as decided, are stated in the opinion of the court.

The exceptions were overruled, and judgment rendered in favor of the plaintiffs ; and thereupon the defendants appealed.

*Gilliam & Pruden*, for appellants.
*Smith & Strong*, contra.

RODMAN, J. *First exception.* The defendant was appointed guardian of the plaintiff in 1857. The referee does not state at what time he came to a settlement with the administrator of her father, and received from him the notes mentioned under the heads of the several exceptions. We assume that he did so soon after his appointment.

In December, 1862, the defendant assigned or delivered to one Isaac Freeman a note made by Floyd, Pugh and Cotton, and also one made by Walston, Pugh and Cotton, which he held as guardian, and which together amounted to $3,425.30. In exchange he took the note of said Freeman for that amount, payable to him as guardian, to which James Freeman, the son of Isaac, afterwards became a surety. Isaac Freeman was a man of wealth, and in good credit; his son James had but little means. The makers of the notes which the defendant assigned to Isaac were men apparently of large means. Their property, however, consisted mostly of slaves, and they owed more than the value of their lands. The referee finds that " this exchange of notes was enjoined by a prudent regard for the interests of his wards," and that the notes which the defendant assigned would have been a total loss if he had retained them until the end of the war, whereas, it is probable that a considerable sum will be recovered from the note of Freeman. The referee nevertheless has charged the defendant with the full amount of the notes which he assigned, and the Judge confirmed his report. Defendant excepted.

According to the familiar principles which govern the liability of guardians, we think the plaintiff has no right to complain in this matter. No fraud is imputed to the defendant, and he seems to have acted with a prudence and foresight unusual at that time. It is true he did not take a *good* surety from Isaac Freeman, when it appears that Isaac might have given one, if he had been inclined to. But it does not appear, but that if any other surety than James had been insisted on, Isaac might have refused the exchange. It is unnecessary to repeat what has been so often said. If it be a case in which a guardian has a discretion, and it has been honestly exercised, the courts will not hold him liable for the results. In this case he had the power to exchange property of his wards which he thought hazardous, for other property, and the exchange was not only honest, but seems to have been fortunate.

We do not concur with the Judge. This exception is sustained. The plaintiffs are entitled to have assigned to them the note of Isaac Freeman, and to have all that has been, or that may be, collected on it.

*Second exception.* The defendant, as guardian, received from the administrator a note of Askew, which was without surety. He surrendered this note on taking from Askew one payable to himself as guardian, but without surety. Askew was in independent circumstances. It was the statutory duty of the defendant either to have collected the money or to have required Askew to give a surety. That Askew was in good credit, or, in fact, rich, did not exempt the defendant from the performance of a duty required by statute. It was not a case in which he had a discretion. He is liable for the amount of this debt. This exception is overruled.

*Third exception.* For the same reasons the defendant is properly charged with the unpaid residue of the Holly debt. This exception is overruled.

*Fourth exception.* The property of the wards consisted of

lands, slaves and notes. The guardian rented out the lands and hired out the slaves each year, upon the terms that he did not oblige himself to take payment of the rents and hires in Confederate money, and would not do so, except so far as money might be needed for the support of his wards. He did receive Confederate money for these rents and hires. He also, during the war, received payment of sundry notes due to his wards which were then apparently good, in Confederate currency. All these sums were expended in the support and education of the wards. In some years he expended for that purpose more than the income of the year. But it does not appear that during the whole term of his guardianship, he expended more than the whole income of the wards' estate. Whether the terms of renting and hiring damaged the interests of the wards, does not appear. It is not material to inquire whether they were the wisest that could have been adopted. It was a case in which the guardian was obliged to use a discretion, and as he did it honestly, he is not liable for the results, whether good or ill. We think, also, he was justified in receiving payment of old debts in Confederate money, if the money was needed for paying taxes, or for the support and education of his wards. He could obtain payment in no other money, and of course nobody would give more for a note than its face value. We think, as to these transactions, the guardian should be charged with what he received, and credited with what he paid out, it not appearing that he collected anything prematurely, or kept on hand any unreasonable sum.

With regard to the loss from exchanging the old issue of Confederate currency for new, we are of opinion that it should not fall on the guardian. The sum he had on hand ($2,500) was not more than it was prudent to have, in view of the needs of his wards, and the exchange at a discount of one-third was a loss which everybody suffered, and which he could not help.

Judgment below reversed, and case remanded to be proceeded in, in conformity with this opinion.

Let this opinion be certified. The defendant will recover costs in this court.

PER CURIAM.                               Judgment accordingly.