J. W. GRANT, Adm'r, v. W. H. HUGHES, Ex'tr.

*Agreement—Accounts of Executors—Evidence—Statute of Limitations.*

1. Where it was agreed by counsel that the Judge in the Court below might decide from the pleadings, admissions, and inspection of an account offered in evidence, whether the plaintiff was entitled to judgment, *It was held* in effect, submitting the case as a "case agreed."

2. The *ex parte* accounts of executors and administrators passed upon by the Probate Judge, are only *prima facie* evidence of correctness. They may be attacked by the next of kin, or any other person interested in the estate. (The Code §1399).

3. Where an action is brought to compel a settlement of the estate of an intestate in the hands of his administrator, the administrator is a trustee of an express trust, and the statute of limitations does not apply.

4. The statute of limitations does not run, when there is no one *in esse* capable of suing.

5. Where an administrator pleaded a final account, taken *ex parte* by the Probate Judge, in bar of an action by the next of kin, but the answer was vague and indefinite, and contained unsatisfactory statements in regard to the administrator's dealings with the estate, *It was held*, that it was proper to order a reference to re-state the administration account.

(*Villines* v. *Norfleet*, 2 Dev. Eq., 167 ; *Heilig* v. *Foard*, 64 N. C., 710 ; *University* v. *Hughes*, 90 N. C., 537 ; *Temple* v. *Williamson*, 91 N. C., 82 ; *Falls* v. *Torrance*, 2 Hawks, 490 ; *Same case*, 4 Hawks 412 ; *Petty* v. *Harman*, 1 Dev. Eq. 191 ; *Ivey* v. *Rogers*, Ibid. 58 ; *Hodges* v. *Council*, 86 N. C., 181 ; cited and approved).

CIVIL ACTION, tried before *Graves, Judge,* at Spring Term, 1885, of the Superior Court of NORTHAMPTON county.

It appears that in the month of July, 1861, John M. Calvert, of the county of Northampton, died intestate in that county, and on the first day of September of that year, Samuel Calvert was duly appointed and qualified as administrator of his estate, and took possession thereof.

Afterwards, Samuel Calvert, of the same county, died therein, in the year, 1881, as was at first supposed, intestate, and the defendant W. H. Hughes, was appointed administrator of his estate. Afterwards, however, it was discovered that he left a

will, which was duly proven, and the defendant duly qualified as executor thereof.

Before the beginning of this action, the plaintiff was appointed and duly qualified as administrator *de bonis non* of the first above named John M. Calvert, on the 27th day of December, 1881.

This action was brought on the 28th day of December, 1881, to compel an account and settlement of the estate of the intestate of the plaintiff, that came, or ought to have come, into the hands of Samuel Calvert, his administrator, now deceased, of whose will, the defendant is executor, and to recover such sum of money as may be ascertained to be due to the plaintiff.

The defendant, in his answer, admits the facts above stated, and pleads matter of defence as follows:

" And for a further defence to said action, and as a plea in bar thereto, the defendant says that his testator, the said Samuel Calvert, has fully administered the said estate of John M. Calvert, which came into his hands. That he has collected all of the assets belonging to said estate that could be collected ; that he has paid all of the debts due by said estate ; that he has paid over the balance in his hands to those who were entitled to receive the same, to-wit: the widow and children of the said John M. Calvert; that he has filed his final account of his dealings with said estate in the Probate Court of Northampton county, on the first day of June, 1874, together with his vouchers, and also the amounts advanced as aforesaid, together with the vouchers for the same; that said final account was examined and approved by N. R. Odom, Probate Judge of Northampton county, and entered of record in said court; and the said vouchers filed therein, on said first day of June, 1874 ; that the same was in all respects full and fair and correct ; that on said final accounting, there was a balance ascertained to be due said estate of $7,528.24, which belonged in equal parts to the widow and the two children of said John M. Calvert, they being his only heirs ; that a large portion of said balance arose

from the sale of the Rix and Underwood tracts of land, to-wit: $1,750 and $1,076.08, which said tracts of land have been claimed by, and are now in possession of the heirs of said John M. Calvert, and ought to be credited in favor of defendant.

"That of said balance there was found to be due the widow, on said final accounting, the sum of $1,266.84 of her third part, she having received the rest that was due her, as was shown by the vouchers filed as aforesaid; that of her third part of said balance, it was ascertained that E. V. Calvert, one of the children, had been paid the whole, and was in debt to the said Samuel Calvert in the sum of $226.31; that of his third part of said balance, it was ascertained that Matt. Calvert, the other of the said children, had been paid the whole by the said Samuel Calvert, and was in debt $1,314.54; that since said final accounting, the said Samuel Calvert has received on the claim against Motley & Bowers, for the stock of goods sold them, and which claim the said administrator thought at the time could not be collected at the date of said accounting and as reported, the sum of about $1,000, and out of said sum has fully paid off and discharged the balance due the widow as aforesaid, and has fully settled with the children for their part of the same; that the estate came into the hands of his testator during the uncertain period of the war, when it was difficult to make collections, and defendant alleges that the large balance, and the credits realized by his testator, and with which he charged himself in said final accounting, to-wit: the sum of $20,716.15—shows great diligence on his part, and places his administration of the estate above suspicion; that many of the bonds and accounts were insolvent by reason of the war, and the amounts realized on them sometimes the result of troublesome litigations; that the plaintiff's cause of action arose more than three years before the bringing of this action, and defendant pleads the statute of limitations; that the plaintiff's cause of action arose more than six years before the bringing of this action, and defendant pleads the statute of limitations.

"This action was not commenced within ten years after the cause of action accrued, and the defendant expressly pleads the statute of limitations."

To this part of the answer, the plaintiff replied as follows :

"The plaintiff, replying to the new matter set out in defendant's answer, says :

"1. That the facts set out in allegation No. 8 are not true, save and except so much thereof, as states that the said Samuel Calvert did, after said so-called final account, collect $1,000 on account of said estate ; and the plaintiff further alleges, that at the time said final account purports to have been filed, to-wit : on June 1st, 1874, the widow of John M. Calvert was dead, and had been dead for a long time, to-wit : since the year 1868 ; and no administration was ever taken on her estate ; that Matt Calvert, one of the children of said John M. Calvert, died before said account purports to have been filed ; and no administration was taken out upon the estate of said Matt Calvert, until after the death of defendant's testator, to-wit : in 1873 ; and that the child of said John M. Calvert, to-wit : Virginia Calvert, was a minor under the age of twenty-one years at the time said final account purports to have been filed ; and was under the age of twenty-one years at the time of the death of said Samuel Calvert. "

It was admitted that the widow of John M. Calvert died in May, 1872 ; that Matt Calvert, one of the children, died in March, 1874 ; that E. V. Calvert, the other child, (now Mrs. Moore), was born July 6th, 1860 ; that no administration has ever been taken out upon the estate of the widow ; and none upon the estate of Matt. Calvert, until after the death of Samuel Calvert, said administration being taken out on the 27th day of December, 1881 ; that plaintiff qualified as administrator de bonis non upon the estate of John M. Calvert before the commencement of this action ; that Matt. Calvert was born the 1st of January, 1850 ; and that the said widow, Matt. Calvert and E. V. Calvert (now Mrs. L. L. Moore), were the only heirs and distributees of John M. Calvert.

In support of his plea in bar of an account, the defendant introduced in evidence to the Court, the account filed by Samuel Calvert on the 1st day of June, 1874, before the Probate Judge. No other testimony was introduced by plaintiff or defendant.

Plaintiff's counsel then said that his Honor could decide from the pleadings, admissions and inspection of said account, whether the plaintiff were entitled to the judgment demanded by him, to which defendant's counsel agreed.

His Honor held that said account was a final account, but not a bar to plaintiff's action. His Honor overruled the plea of the statute of limitations, and gave judgment that the plaintiff was entitled to an account, as asked for in his complaint, and adjudged that the cause be referred to R. O. Burton, Jr., to state an account of the estate of John M. Calvert, which came, or ought to have come, into the hands of Samuel Calvert as his administrator, and report to the next term of the Court.

The defendant having excepted, appealed from this judgment to this Court.

*Messrs. W. C. Bowen* and *Spier Whitaker,* for the plaintiff.
*Messrs. Thos. W. Mason* and *R. B. Peebles,* for the defendant.

MERRIMON, J. (after stating the facts). It must be assumed that the parties agreed that the Court should take the papers, and upon the pleadings, admissions and inspection of the "account" relied upon by the defendant as a bar to the action, give such judgment as the law allowed. It would savor of trifling with the Court, to agree that it should simply decide that the plaintiff was or was not entitled to the judgment demanded in the complaint, and then stop without giving an appropriate judgment.

The obvious effect of the agreement as it appears in the record was, that the Court should accept and act upon the material facts, as they appeared in the record, and give such judgment upon the whole case—the law and facts—as the law might allow. It

was not a case where the parties agreed to a " trial by the Court " —that is, to waive a trial by jury, and stipulate that the Court should find the issues of fact and law, as allowed by The Code, §§416, 417. Practically, the parties submitted to the Court for its judgment " a case agreed," and it must be so treated.

The defendant alleges as matter of defence, and as a bar to the action, that his testator, in his life time, fully administered the estate of the intestate of the plaintiff, and "filed his final account of his dealings with said estate in the Probate Court of Northampton county, on the first day of June, 1874, together with his vouchers," and that this account was examined and approved by the Judge of Probate, and entered of record in that court," &c.

The account thus filed and approved, was not a bar to this action, nor would it be to an action by the next of kin, or indeed, of any person to be affected by it. It was not conclusive as to any person interested, whether it be governed by the law as it prevailed before or since the statute, (The Code, §1399), became operative. This statute simply makes the approval of such account by the Clerk of the Superior Court, acting in his capacity as probate officer, "*prima facie* evidence of its correctness." It was an *ex parte* statement, and the statute only shifted the burden of proof as to what it contained, to those who might have occasion to question its correctness. *Villines* v. *Norfleet*, 2 Dev. Eq., 167 ; *Heilig* v. *Foard*, 64 N. C., 710 ; *University* v. *Hughes*, 90 N. C., 537 ; *Temple* v. *Williams*, 91 N. C., 82.

The Court properly held that the statute of limitation, invoked by the defendant, did not bar the action. The action is not brought upon the official bond as administrator of the testator of the defendant. It is brought to compel an account and settlement of the estate of the intestate of the plaintiff in his hands in his life-time. He was a trustee of an express trust, and the statute of limitation did not apply.

Nor could the defendant avail himself of the equitable defence of lapse of time. The demand for an account and settlement of

the estate was not, under the circumstances, a stale demand. The administration began in September, 1861. The lapse of time next thereafter, until the first day of January, 1870, must be excluded, as directed by the statute. (The Code, §137). The widow of the intestate of the plaintiff died in May, 1872, and there has been no administration as to her, and, therefore, no one who could sue for her distributive share of the estate. There were only two of the next of kin, a son and a daughter. The son died in March, 1874, and there was no administration as to him, until the 27th day of December, 1881. The daughter did not come of age until the 26th day of July, 1881, and she became covert before she came of age. The testator of the defendant died in 1881.

This action was begun on the 28th of December, 1881, the day next after the plaintiff qualified as administrator. So that less than two and a half years ran against the widow in her lifetime; less than four and a half years against the son while he lived, and none against the daughter. The time during which there was no one capable of suing should not be counted. Obviously, therefore, lapse of time should not be allowed to bar this action. *Falls* v. *Torrance*, 2 Hawks, 490 ; *Falls* v. *Torrance*, 4 Hawks, 412 ; *Petty* v. *Harman*, 1 Dev. Eq., 191 ; *Ivey* v. *Rogers*, Id. 58 ; *Hodges* v. *Council*, 86 N. C., 181.

We think that the judgment directing an account, and ordering a reference to that end, was well warranted by what appeared in the case as submitted to the Court.   Granting that the account filed by the testator of the defendant, as administrator of the intestate of the plaintiff, was *prima facie* evidence of its correctness, the facts admitted, and others stated in the answer, show very clearly that the estate was not fully administered, settled and distributed, as it should have been, and as the law required.   In one part of the answer it is stated, that he " paid over the balance in his hands to the widow and children " of his intestate —in another part it is stated, that on the "final accounting there was a balance ascertained to be due said estate of

$7,528.24, which belonged in equal parts to the widow and the two children named; that this sum, "arose from the sale of the Rix and Underwood tracts of land," that the heirs of his intestate were in possession of, and claimed this land, and the administrator ought to have credit on that account—in another part of the answer it is stated, that on the final account, it appeared that the widow's share of the balance was $1,206,84—that this share due her was paid, but to whom paid is not stated. It is further stated that since the "final account," he had collected from a source mentioned, about $1,000; "that many of the bonds and accounts were insolvent by reason of the war," what ones were solvent and what insolvent does not appear. The widow, as we have seen, died in 1872, the final account was filed in 1874; there was no administration on the estate of the widow. To whom was her distributive share paid? It does not appear. The son died in 1874, and there was no administration on his estate until December, 1881. With whom was there a final settlement as to his distributive share? The daughter was an infant. To whom was her distributive share paid? who was authorized to receive it? How was the $1,000, collected since the "final account," distributed? The answer states, "that out of said sum he has fully paid off and discharged the balance due the widow as aforesaid, and has fully settled with the children for their part of the same." How and when? What proper vouchers did and could he get?

It thus appears from the defendant's answer, apart from the allegations of the plaintiff, that the "final account" relied upon, and the vouchers that must have been in a large part the basis of it, were vague, and indefinite, questionable and unsatisfactory. It is strange that the testator of the defendant, as such administrator, did not in his life time, apply to the Court by a proper proceeding, and have so large an estate settled under the supervision of the Court. Such a settlement would have been a finality. That he did not, and the "final account" relied upon was *ex parte*, are facts suggestive that an account should be taken.

It may be, that the account when taken, will show that the estate was duly administered. We do not mean to suggest otherwise—what we decide is, that from what appeared, the Court properly directed an account to be taken, and ordered a reference for that purpose.

There is no error. To the end that further proceedings may be had in the action according to law, let this opinion be certified to the Superior Court. It is so ordered.

No error. Affirmed.