THE STATE ex rel. W. W. TURNER and J. M. TURNER, Adm'r of HENRY TURNER, .v. BENJ. TURNER et al.

*Evidence—Burden of Proof—Settlement—Guardian—Administration—Judge's Charge.*

1. The *ex parte* settlement made by guardians, executors and administrators with the Courts having jurisdiction of such matters, are, when accepted by the Court, *prima facie* correct, and while not conclusive upon creditors or next of kin, and strict proof and specific assignment of errors are not required as in actions to surcharge a stated account, nevertheless the burden is on the party attacking them to establish, by a preponderance of testimony, their incorrectness.

2. It is not erroneous for the Judge to direct the attention of the jury to the contention of a party to the cause made in the argument of his counsel, founded upon a calculation of an account alleged to be due, when that fact grew out of the evidence introduced and was material to the controversy, especially when no objection was made to the argument.

This is a CIVIL ACTION, tried before *Merrimon, J.*, at August Term, 1889, of IREDELL Superior Court.

The plaintiffs asked to be subrogated to the rights of Harry Burke and wife, and that the defendants should be compelled to contribute their proportionate part to reimburse them for money they had paid Burke and wife on account of their intestate, Henry Turner, being a co-surety with the defendants Adams and Sharpe on the guardian bond of the defendant Benjamin Turner.

It was in evidence, and not denied by defendants on the trial, that, on the 16th day of November, 1859, the defendant Benjamin Turner was appointed guardian of his then infant daughter M. D. Turner, and entered into bond in the sum of $3,200, with the defendants Adams and Humphrey Nichols as sureties; that, on the 19th day of May, 1863, the defendant Benjamin renewed his guardian bond by giving another

in the sum of $10,000, with the defendants A. P. Sharpe and Henry Turner as sureties; that, on the 13th of September, 1866, the defendant Benjamin was removed and one J. Martin Turner was appointed guardian in his stead, and entered into bond in the sum of $3,500, with Henry Turner and one Martin Gaither as sureties; that, upon the removal of the defendant Benjamin, the Court of Pleas and Quarter Sessions appointed F. H. Pendleton and C. R. Jones, two of the Justices of Iredell County, to make a settlement with him of his guardianship, which they proceeded to do, and reported to the Court that they found in his hands the sum of $1,335.44, and this report was confirmed by the Court, which amount the defendant Benjamin afterwards paid to the new guardian, J. Martin Turner, amounting, when paid, to the sum of $1,656.30, and the said J. Martin Turner gave him a receipt in full for that amount, as appears by the Jones and Pendleton settlement.

The ward, M. D. Turner, inter-married with Henry Burke while still a minor, and, soon after obtaining her majority, she and her husband commenced an action against J. Martin Turner and his sureties, and prosecuted the same to final judgment, recovering the full penalty of his bond, to-wit, $3,500. During the pendency of this action, Henry Turner died intestate, and the relators, W. W. and J. M. Turner, were appointed his administrators.

Since the recovery of said judgment, J. Martin Turner has died, and his estate is insolvent, and Humphrey Nichols is dead and insolvent, and the defendant Benjamin Turner is insolvent.

The relator had the judgment of $3,500 to pay (except about $300 paid by J. Martin Turner and Martin Gaither), which they paid to Henry Burke and his wife M. D. Burke on the 5th day of January, 1885, and had the judgment assigned to J. Chapman Turner for the benefit of their intestate's estate.

The plaintiffs allege that the *ex parte* settlement made with Jones and Pendleton by the defendant Benjamin Turner of his guardianship was fraudulent and was not a full and fair account and settlement of all the estate of his ward, while the defendants denied this allegation and alleged that it was a full and fair settlement by Benjamin of the estate of his ward.

The following issues were submitted to the jury, together with others which are not material, the plaintiffs having tendered, before the issues were settled by the Court, an issue asking that the jury find the difference between the amount the defendant Benjamin paid J. Martin Turner and the amount paid Henry Burke and wife by plaintiffs. This issue was objected to by defendants, who stated that it involved a matter of account, and was stricken out, by order of the Court, without objection.

The Court told the jury, if they found the two first issues Yes, they need not consider the other issues, and the jury made no finding as to them. There was no exception.

1. Was the Jones and Pendleton settlement a full and fair account and settlement by the defendant Benjamin Turner of all the property, money or estate, then in his hands, belonging to his ward, M. D. Turner? Answer: Yes.

2. Did the defendant Benjamin Turner pay over to his successor, J. Martin Turner, all the property, money and estate then in his hands, or which should have been in his hands, belonging to his ward, M. D. Turner? Answer: Yes.

The defendants then offered in evidence the deposition of the defendant Benjamin Turner, in which he testified that he did not account for the sum of $3,400 in Confederate money received from the defendant Adams in 1862, and that he made a charge of over $1,000 in the Jones and Pendleton settlement for board, &c., that was afterwards disallowed by the Court. They further showed by the testimony of the commissioner who took the account in the case of

*Henry Burke and wife* v. *J. Martin Turner,* and his bondsmen, that the defendant Benjamin Turner *then* swore that he did not make a full and fair settlement of his guardianship with Jones and Pendleton; that he did not account for the Confederate money received from Adams, and that he would not have made the charge of over $1,000 for board, clothing, &c., but for his contemplated insolvency; and the defendants offered in evidence the Jones and Pendleton settlement—the receipt of J. Martin Turner for $1,656.30 above mentioned.

Upon the return of the verdict of the jury, plaintiffs moved the Court for a new trial—

1. For the reason that plaintiffs had offered the strongest possible evidence—that of one of the defendants, who made the Jones and Pendleton settlement—that it was not a full, fair and complete settlement of all estate in his hands belonging to his ward, M. D. Turner, and defendant had offered no evidence to the contrary.

2. For misdirection to the jury by the Court. The defendants' counsel had argued to the jury that it had been shown in evidence that Burke and wife had only recovered of J. Martin Turner and the surety on his bond the sum of $3,500, and if they would take the amount of the receipt ($1,656.30) and compute the interest thereon, compounding the same until Mrs. Burke came of age to 1877, it would about make $3,500, which was the strongest evidence that the Jones and Pendleton settlement was a fair and honest one and that Benjamin Turner had paid J. Martin Turner all that was due him. There was evidence showing Mrs. Burke's age and the time of her marriage  The Court instructed the jury, "that the plaintiffs alleged that the Jones and Pendleton settlement was not an honest and fair settlement of all the estate of M. D. Turner in the hands of her guardian Benj. Turner. The defendants deny the allegation and say it was a full and fair settlement.  The plaintiffs insist that they have shown that it was a fair and honest settlement by the deposition of

the defendant Benjamin Turner and the evidence of Commissioner Connelly, as to what he swore in the case of *Burke and wife* v. *Martin Turner and his sureties.* The fact that the Jones and Pendleton settlement was accepted and confirmed by the Court of Pleas and Quarter Sessions, and ordered to be recorded, is a very strong presumption that it was correct, and the defendants' counsel argue to you that if you will take the receipt of $1,656 30, given to Benjamin Turner by his successor, and compute the interest thereon to the date of the judgment in the case of *Burke and wife* v. *J. Martin Turner and his sureties,* compounding the same until Mrs. Burke comes of age, that it will make just about $3,500, and you are at liberty to consider this argument of defendants' counsel, as you are all the arguments in the case, both for plaintiffs and defendants, and say whether the Jones and Pendleton settlement was a fair and honest settlement or not. The burden of proof is on the plaintiff to satisfy you by preponderance of evidence. If you find the first issue, Yes, you will find the second Yes.

The Court then, addressing the counsel in the case, said: "I suppose there is no objection to instructing the jury to find the second issue Yes if they find the first Yes." To which the attorneys on both sides replied there was none.

There was no exception taken by plaintiffs to arguments made by counsel for defendant nor the instructions given by the Court to the jury until after the verdict. Upon the motion for a new trial the point was made that the argument by defendants' counsel, that the principal and compound interest upon the $1,656.30, up to the time Mrs. Burke reached her majority, would be about $3,500, was improper.

The Court told plaintiffs' counsel they should have the benefit of the point as if it had been made in apt time.

Plaintiffs excepted. Judgment for defendants. Plaintiffs appealed.

*Messrs. D. M. Furches* and *W. D. Turner*, for the plaintiffs.
*Messrs. T. B. Bailey, W. M. Robbins* and *M. L. McCorkle*, for
the defendants.

SHEPHERD, J.: The question involved in this action is the
correctness of the settlement made by J. M. Turner, guardian
of M. D. Turner, with the removed guardian Benj. Turner.

The former received from the latter the sum of sixteen hun-
dred and fifty-six dollars and thirty cents, and executed to
him a receipt for the same "in full of claims against him as
former guardian of M. D. Turner as per settlement with the
Court." This settlement was made under the order of the
County Court, which had appointed two of its Justices to
make the same, and whose report was duly confirmed.

The Court charged the jury "that the fact that the  *  *  *
settlement was accepted and confirmed by the Court of Pleas
and Quarter Sessions, and ordered to be recorded, was a very
strong presumption that it was correct." To this instruction
the plaintiffs excepted—

1. Although such *ex parte* settlements are not binding upon
creditors, next of kin, &c., they are recognized by the Courts
as *prima facie* correct, and the burden is on the attacking
party to show them to be otherwise. Strict proof and the
assignment of specific errors in such cases are not required, as
in actions to surcharge and falsify "stated accounts," but
there is a *legal* presumption in their favor until they are suc-
cessfully assailed by a preponderance of testimony. This
view is fully sustained by the cases of *Becton* v. *Becton,* 3
Jones Eq., 423; *Temple* v. *Williams,* 91 N. C., 83; *Grant* v.
*Hughes,* 94 N. C., 236.

These authorities say that there is a "*prima facie* presump-
tion" in favor of the correctness of such settlements. By
this we understand that the law presumes that they are cor-
rect until the contrary is shown. Such is the meaning of
*prima facie* evidence; which "is evidence which, standing

alone and unexplained, would maintain the proposition and warrant the conclusion to support which it is introduced." *Emmons* v. *Bank*, 97 Mass., 243.

"It is that which suffices for the proof of a particular fact until contradicted or overcome by other evidence." Thus, if *ex parte* accounts are filed under sections 1399, 1402, 1617 of *The Code*, they are to be taken, *as a matter of law*, to be correct until shown to be erroneous.

Now, if we apply this rule to the charge of his Honor, it is apparent that if he erred at all, it was in favor of the appellant, for had the jury disbelieved the impeaching testimony, or if none whatever had been introduced, they would, under the instruction given, have been at liberty to have found against the settlement; whereas, as a matter of law, they could not have so found under such circumstances. In other words, the Court charged, in effect, that there was a presumption of *fact*, when it should have charged that, as a matter of *law*, the settlement was *prima facie* correct, and should stand unless shown to be otherwise.

It will be observed that his Honor very properly held that only a preponderance of testimony was sufficient; which is the same degree of proof that is required in ordinary suits for account and settlement against executors, administrators, guardians, &c. We are, therefore, of the opinion that the exception is untenable.

2. Neither do we see any error in his Honor's telling the jury that they might consider the result of the calculation mentioned by him. This argument was made to the jury without objection, and did not at that time seem to be obnoxious to the plaintiffs.

It appears that in an action brought by the ward against the bond of J. M. Turner, it was adjudged that the ward should recover the sum of $3,500. The plaintiffs contended that the difference between this amount and the $1,656.30

received by J. M. Turner covered the errors made in the settlement, and for which the said J. M. Turner was held liable for not collecting.

In support of the alleged errors the plaintiffs relied almost entirely upon the testimony of the former guardian, who admitted his unfaithfulness to his trust. The defendants had a right to argue his credibility to the jury, and to call their attention to any circumstance which sustained even slightly the correctness of the settlement. The fact that the $1,656.30, and compound interest thereon, amounted to about the sum of $3,500 when the judgment was taken for the latter amount, was not, from what appears in this record, irrelevant to the inquiry.

3. As to the alleged error in charging the ward with board and clothing, it is sufficient to say that no such question seems to have been raised before his Honor, and no error in this respect is assigned. *Dorsey* v. *Moore*, 100 N. C., 41, and *McKinnon* v. *Morrison*, decided at this term. This may also be said of the first point which we have considered, but as there was an implied admission on the argument that the question was raised below, we have thought proper to pass upon it.

Affirmed.