From the judgment both parties appealed.
The facts are sufficiently stated by Associate Justice MacRae in the consideration of the several exceptions filed by the parties.
This was an action upon the bond of Flythe, guardian of the relators, heard upon exceptions to the referee's report at April Term, 1892, of Northampton. It is proper to say that while the case comes up upon appeals of both plaintiffs and defendants from the judgment of his Honor JudgeBrown, the exceptions to be considered are from the rulings of MacRae,Judge, at a previous term of said court.
We will first consider the plaintiffs' appeal: Exceptions 1, 5, 6 and 7 involve the admissibility of the testimony of Jesse Flythe and William Grant, two of the defendants, being exceptions to certain findings (105) of fact based wholly or in part upon the testimony of the said defendants.
It is contended by the learned counsel for the plaintiffs that the defendants are incompetent to testify by reason of the proviso of section 580 of The Code, that "no person who is or shall be a party to an action founded upon a judgment rendered before the first day of August, 1868, or on any bond executed prior to said date, . . . shall be a competent witness on the trial of such action."
It will appear, however, by an examination of the record, that this action was brought upon two bonds of defendant Flythe, as guardian, one executed before and the other after 1 August, 1868, and that there was an amendment of the complaint allowed by the referee, striking out all reference to the bond executed since that date; but all of the testimony of defendant Grant and nearly all of that of defendant Flythe was admitted before the amendment and while the action was upon the two bonds.
But we are not prepared to hold that the testimony was incompetent under section 580, even when the action is based upon the bond executed prior to 1 August, 1868, alone. There has been much legislation upon the subject of evidence of late years in North Carolina. Before 1866, generally speaking, no party in interest was a competent witness on the trial of an action. By chapter 43, Laws 1866, styled "An Act to Improve the Law of Evidence," the door was opened to all, and now, by section 589 of The Code, "no person offered as a witness shall be excluded by reason of his interest in the event of the action." It will not *Page 79 
be necessary to advert to section 590, which provides certain exceptions to this general rule.
In the C. C. P. of 1868, under the head "A party may examine his adversary as a witness," section 333 provided "A party to an action may be examined as a witness at the instance of the adverse party, or of any one of several adverse parties, and for that purpose may be compelled in the same manner and subject to the same rules of (106) examination as any other witness, to testify either at the trial or conditionally or on commission." This section is the basis of section 580 of the present Code, and is the first paragraph thereof.
The Act of 1879, chapter 183, added a proviso that "no person who is a party to a suit now existing, or which may hereafter be commenced, . . . that is founded on any . . . bond under seal for the payment of money, or conditioned to pay money, executed prior to the first day of August, 1868, shall be a competent witness," etc. This act was construed not to apply to official bonds. Morgan v. Bunting, 86 N.C. p. 66.
There was a material change in this proviso by the Acts of 1883, ch. 310, in which the words any bond are used, and the words, "for the payment of money or conditioned to pay money," are omitted; and the plaintiff contends that the effect of the last-mentioned amendment was to make incompetent any party to an action upon any bond, official or otherwise, executed prior to 1 August, 1868.
Section 580 of The Code is composed of section 333, C. C. P., with the proviso introduced by the Act of 1879, as amended by the Act of 1883.
A subsequent Act, chapter 361 of 1885, enables defendants who are administrators or executors to testify in actions upon bonds executed before 1 August, 1868, where there is a reference to state an account. This Act, it seems to us, was passed out of abundant caution and to exclude such a conclusion in regard to executors and administrators, as is sought by the plaintiff in the case of a guardian, for it is impossible that section 580 could be made to apply to the examination of a defendant upon a reference to state an account. The present action is in the nature of a bill in equity for an account. The very nature of the action makes it a bill of discovery, the object of which is to have the defendant guardian to answer upon oath, and to make discovery of his dealings (107) as guardian. 1 Story Eq. Jur., sec. 447; 2 Story Eq. Jur., sec. 689.
While the Act of 1879 was amended by the Act of 1883 so as to strike out the words "for the payment of money," etc., and make it read "upon any bond," to give it the construction called for by the plaintiff, and to hold that the defendant guardian could not testify nor be compelled to *Page 80 
testify upon the taking of the account, would take away the equitable jurisdiction of the court to require a discovery and accounting by a fiduciary, the essence of which is the examination of the defendant and the discovery of him under oath. It is to be noted that this action is not the old action for discovery in aid of the prosecution or defense of another action, which was abolished by section 579 of The Code, having been rendered useless by the changes in the law of evidence.
The proceeding in which the testimony of these defendants was given was upon the taking of the account demanded by the plaintiff, before the referee, and not upon the trial of the action.
Exception 2 is to finding No. 8, "That there is no evidence that the administrator used any of the money received by him on account of said estate for any other purpose than for the payment of the debts and expenses of administration of said estate, or that he did not pay out in satisfaction of such debts and expenses the same money which he received on account of said estate."
The administrator and estate referred to above are S. J. Calvert, administrator upon the estate of Newitt Harris, deceased.
The contention of plaintiffs is that the defendant guardian and the sureties on his bond are liable for the failure of the guardian to hold the said administrator to account for a devastavit alleged to have (108) been committed by him in the said administration to the damage of the wards of said guardian, the present relators.
The said Calvert, administrator, died before the commencement of the present action; there has been no final settlement of the estate of his intestate, and no administrator de bonis non has ever been appointed for that purpose.
The administrator filed his inventory and account of sales at March Term, 1862, of Northampton County Court, and an account of his administration was stated by the clerk of the Superior Court of said county in some action pending in said court and the vouchers are now on file in said clerk's office.
From these data the referee has made up the account of said administration.
Plaintiffs contend that from this account there is evidence that the said administrator did use the money which came into his hands as administrator; that by June, 1862, he had received $5,219.21, and up to January, 1863, he had paid out only $2,271.24; and, further, that it appears by said account that he paid a part ($407) of one of the bonds which he ought to have paid in full before paying any simple contract debt. As to the contention that this account furnishes in itself some evidence that the administrator used the funds of his intestate for his own benefit, we think that it requires more than an admission that the *Page 81 
administrator had the money in his possession to prove that he appropriated it to his own use. It was not always easy to pay the debts of an estate considered fully solvent in Confederate money, and this is a matter of general information.
It would seem that the burden in this case should be upon the plaintiff, for the account filed or taken before the Clerk, with the vouchers, was presumably under the oath of the administrator, and therefore primafacie correct. Grant v. Hughes, 94 N.C. 231. It would be a hard measure to put upon the defendants in this action the burden of disproving the allegations of plaintiff as to the mismanagement of the estate, the administrator of which is now deceased. The finding, (109) we think, is in accordance with the evidence. It is true that an action against an executor or administrator, when the plaintiff shows by the inventory and account of sales that assets came into the hands of the personal representative, the burden is upon him to show that they have been duly administered; but when, in addition to the inventory and account showing assets, there is the further statement under oath of his disbursements, this is prima facie evidence, subject to attack, but it stands if no evidence is offered to dispute it.
In Villines v. Norfleet, 17 N.C. 167, where it was sought to surcharge a settlement of an executor's account by commissioners appointed by the court, it was held that said settlement, while not a bar to a future action, did rebut a presumption of fraud.
Exceptions 3 and 9. — These exceptions involve the correctness of the referee's finding, and the ruling of the judge below on the fourth, fifth and sixth exceptions, relating to the finding of the referee that Newitt Harris was indebted to S. J. Calvert on open account $1,200. The point is whether the account filed by the administrator is prima facie
evidence of its truth, or is it necessary, when it is denied in the complaint that the guardian should offer proof to sustain it? This is the same question which we have just discussed.
Section 16 of the complaint alleges that the administrator rendered the account in December, 1866. This action, as we have said, is not for an accounting by the administrator, but it is an action against the guardian and the sureties upon his bond, alleging that the guardian negligently permitted an estate in which his wards were interested to be squandered; it was alleged that S. J. Calvert, administrator of Newitt Harris, had rendered an account in 1866 in which he retained $1,200 to pay an allegal [alleged] debt to himself, which debt was in fact not owing to him. There was no question about the account having been rendered; (110) it was as to the correctness of the $1,200 alleged debt; it appeared in the account, that plaintiff had a right to attack it.
It may be that, as was said in Finch v. Ragland, 17 N.C. 137, the *Page 82 
court presumes against an administrator dealing with the estate for his own benefit; but in the same case it was said by the elder Ruffin: "It may be said that the defendant ought to discharge himself by proof. In such case the answer is proof. If an administrator inventory a debt as desperate he cannot be charged with it but by proof on the other side that it was collected or might have been. Here the plaintiffs have sought to charge the defendants upon their oath. They must take their answer, subject, indeed, to be disproved." That action was brought directly against the administrator for an account, etc. How much more strongly does his Honor's reasoning apply to the present case, where it is sought, in a suit against a guardian, to falsify an account rendered by the administrator of an estate in which his wards were interested, the administrator having rendered an account and died long ago? This will apply to the $1,200 retainer, where no voucher was filed, as well as to the $556.13 item, alleged to have been paid to Samuel Calvert, administrator.
Exception 4 relates to finding 11 of the referee, which is the same as finding 13 of the judge, and it is as follows: "The estate of said Drewry Harris was amply able to pay all the debts owing by said Drewry Harris as principal, and but for the two surety debts aforesaid it would not have been necessary to sell the lands devised by said Drewry to Thomas, Mary, Martha and Addie Harris."
The contention is that Drewry Harris's estate was amply able to payall his debts without recourse to his lands, had the executor properly applied the proceeds of the personalty. And this contention is correct, but the sale of the land became necessary by reason of the two (111) surety debts, which remained unpaid after the payment of legacies in Confederate money by the executor, and as it appeared that the executor was insolvent, and nothing could have been made out of him by an action by the guardian, the result has not been affected by this finding.
Exception 8 relates to the overruling of plaintiffs' third exception, which was in these words: "For that he admitted the guardian returns offered by defendants."
These returns were referred to in the testimony of defendant Flythe and were testified by him to be correct; they were admissible as part of testimony and as a sworn statement in corroboration of his testimony, which we have held to be competent.
Exception 10 is first to the application of the scale in the administration account and second to the application of the scale in the guardian account by the referee; that it was error to have applied the scale of Confederate currency to the balance found to be in the hands of the administrator at the end of the war. The administrator appears by the account to have reduced the personal property of his intestate to money *Page 83 
in 1862, 1863 and 1864 — a large proportion thereof in January, 1862 — and to have paid the debts of his intestate during the years 1862, 1863 and 1865. The balance on hand at the end of the war was $2,084.08 — this sum was scaled at $3 for $1, the scale value of January, 1863 — being an average — instead of an application of the scale to each item of debt and credit in the account. This seems to have been in accordance with the practice in North Carolina, and to be sustained by the decisions of this Court. Francis v. Wilson, 74 N.C. 368; Drake v. Drake,82 N.C. 443; McNeill v. Hodges, 83 N.C. 504.
The exception is further to a failure on the part of the referee to charge the administrator with interest on his receipts. Having sustained the finding that there was no evidence of the appropriation by the administrator to his own use of the funds of his (112) intestate, we see no good reason for charging him with interest.
The same exception alleges error in the application of the scale in the guardian account. This account appears to have been closed and a balance struck at the end of every year, and interest computed according to the rule in guardian accounts. And the receipts and disbursements being both in Confederate currency, the scale was applied at the end of the war upon the balance as then found. In the account with the ward Addie Harris the balance was against the guardian, and in that with the ward Mary it was in his favor. We hold that the scale was properly applied upon the authorities already cited, and upon reason.
Exception 11 alleges error in overruling plaintiff's thirteenth exception to the report of the referee, for his finding that S. J. Calvert, administrator of Newitt Harris, did not use (as his own) the money belonging to the estate of his intestate.
The account and vouchers showed disbursements from time to time during the period of the administration, which would indicate, in the absence of evidence to the contrary, that the money was paid out as it was received, and the plaintiff has offered no evidence to the contrary.
Exception 12 alleges error in overruling the fifteenth and sixteenth exceptions to the referee's report that the defendants ought to be held liable for what the guardian might have collected by suit upon the bond of the administrator, including the proceeds of sale by him for assets, of the Powell and Tisdale lands.
Undoubtedly the general principle is that it is the guardian's duty to protect the interests of his wards, and that if they suffer by reason of his negligence, he and his sureties should be liable therefor. It appears that the administrator paid and retained on simple contract debts a sum which should have been applied to the payment of debts of higher dignity, and so have relieved the land devised to the wards (113) of defendant Flythe. These two debts of higher dignity were bonds *Page 84 
on which the intestate Newitt Harris was principal and Drewry Harris was surety, and by the failure of the administrator of Newitt Harris to pay them before he retained and paid the simple contract debts, and by the subsequent insolvency of the estate of his intestate by reason of the emancipation of the slaves, a sale of the land devised by Drewry Harris to the relators became necessary and was decreed in order to pay these bonds. At the time of the payment and retainer of the debts of lower degree by the administrator, the estate of Newitt Harris was solvent, and it became insolvent by reason of the forced emancipation of the slaves.
The general rule, both at law and in equity, is that is would be adevastavit if an executor or administrator should give preference to a debt of lower class over those duly presented of a higher dignity (Moye v.Albritton, 42 N.C. 62; Schouler on Executors and Administrators, sec. 435), just as the general rule with regard to the acceptance and management of Confederate money is that trustees should be held to that degree of care and circumspection which prudent men exercise under similar circumstances in the conduct of their own business affairs. Patton v. Farmer, 87 N.C. 337. But it is common knowledge that there was a hesitation on the part of holders of solvent securities to receive payment of the same in Confederate money, and that after January, 1863, or at the farthest, 4 July, 1863, it was not the act of a prudent fiduciary to accept such payments.
In the little light we have upon this administration there is nothing to show us any willingness on the part of the holders of these bonds to accept payment of the same in Confederate currency except as to the payment of $407 on one of them in 1862. It may be that if the administrator were alive to testify, the reason for the payment of the simple contract debts first would be made to appear to be the (114) refusal of the holders to accept payment of bonds, then entirely solvent, in a depreciated currency.
We are also affected with the knowledge common to all that soon after the close of the war there was such uncertainty as to the solvency of persons and estates, and such embarrassment in the collection of debts, as well might have deterred a prudent man, in the management of his own affairs, from incurring expense of litigation in doubtful cases; and while there was no statute to that effect before the Act of 1869 (section 1496 of The Code), we cannot say that fitting the principles of law and equity, which never change, to the circumstances of this case, where the estate was amply solvent at the date of the retainer and payment, and became insolvent afterwards, without fault of the administrator but by the overpowering effect of the war and its incidents, that in the spirit of liberality which the law exercises towards executors and administrators *Page 85 
(Schouler on Exrs. Admrs., 385, note 1), the courts would then have held that there was no devastavit and that the administrator and his sureties were not liable. Under these circumstances, we are of the opinion that the guardian, in view of all the evidence, was not negligent in failing to bring an action against the administrator of Newitt Harris.
The conclusion arrived at in the consideration of the last exception will dispose of all other exceptions based upon the theory that the guardian and his sureties ought to be held liable for such failure. It was clear the guardian could have made nothing for his wards by a suit against Isaac Peele, executor of Drewry Harris, as he was insolvent immediately after the war, and has remained so ever since. The other exceptions above referred to as virtually disposed of are 15, 18, 19 and 20, involving the question whether the defendant guardian, by due diligence, could have prevented the sale of the Potecasi land, and the exceptions to the supplemental report as to alleged errors in the statement of the account of S. J. Calvert, administrator. (115)
Exception 13 is, first, to a failure to credit Addie Harris with the balance due her on 1 January, 1866, with compound interest, etc., and that such balance should have been $30.90 instead of $10.01, as found. This balance was not charged against the guardian, because it appeared that he had the funds on hand at the close of the war, and they became of no value. Second, the failure to credit Mary Harris with her share of the rents of land and hire of slaves for 1865, on the ground that it was negligence to have hired for cash. It appears that the guardian rented the land and hired the slaves for 1865 for cash, in Confederate currency, and that the same remained in his hands at the close of the war. Was it negligence to have taken cash in the currency of the country under the circumstances? Would a prudent man have preferred to take notes just at that juncture? As was held below, ordinary rules ought not to be applied to transactions of that date, when everything was in such confusion and uncertainty in the section where these transactions occurred that all prudent men, in the management of their own affairs, and fiduciaries in those of others, were at a loss to know what to do. The sequel showed that many solvent securities were soon to lose all value.
Exception 14 is for error in overruling in part exception 25 — "For that in stating said account, he erred in allowing the guardian the following items, to wit, $3.38 paid sheriff bill of costs, 1 March, 1873; no charge against wards. Motion was made to remove him as guardian, and dismissed at his costs. Voucher 58, 2 April, 1874, $10 fee paid attorney W. Bagley to resist motion to remove him." We have been pointed to no judgment against the guardian for the costs. If a motion was made to remove the guardian, which was dismissed or denied, it would seem *Page 86 
that he ought not to be held personally liable for the necessary expenses of resisting the motion.
This exception is also to the allowance of the items $325, 1 (116) March, 1864, and $1,200, 1 March, 1865, upon the ground that there was no evidence to support them. They appeared in the account of the guardian, which he swears to be true; they were open to attack, and in our opinion were not successfully repelled. While apparently large items, the scale applied to the balance as of 1 January, 1865, reduced them to very small sums.
Exception 16 was withdrawn and 17 is admitted to be well taken. It is to an evident error of Judge MacRae in writing the word "sustained," instead of "overruled," to the defendants' tenth exception, and was so treated throughout the subsequent proceedings and, therefore, did not affect the result to the prejudice of the plaintiff. There is
No error.
DEFENDANT'S APPEAL.